Good morning, Your Honors. My name is Love Michoni, appearing on behalf of Petitioners Make Police the Court, and I would like to say welcome to Your Honor Nguyen, as well. I'm new, too, as you can probably already tell. Thank you. An issue in this case is whether or not extraordinary circumstances existed that would waive the one-year bar for petitioners in filing for asylum, and in this case, the Board did not consider some of the factors that were mentioned in the underlying case regarding the delay being caused by them seeking counsel, who then waited six months to get a FOIA request once they fell out of status. But in this situation, can we look at what the IJ said? In this case, they gave, I thought, two justifications here. The first one was that the IJ specifically found the respondent lacked credibility, and talked then about his knowledge when he was informed of denial of his change of status in 2004, and when he learned that he was without status in May 2005, even cited the IJ. So as to the first way that they said, we don't find the IJ had clear error, I think we don't have any jurisdiction. So as we go to the second one, then I'm wondering why I can't look at what the IJ did and come to the same conclusion. Well, Your Honor, you talk about not having the jurisdiction because of the underlying factual dispute, but the Board actually talked about two different ones, taking both dates into account. Well, the Board had two different analyses. The first, if you go by the first analysis, it seems clear we don't have any jurisdiction. I'm not sure. The second analysis, however, it seems to me that if we look at what the IJ did, which they cited the IJ for the first analysis, and now we look at what they said as to the second analysis, I'm still having a tough time. In finding the jurisdiction, Your Honor? Yeah. Well, in the — there wasn't really an underlying dispute as to when they fell out of status and when they filed. More of the dispute was whether it was reasonable as to when they actually did file. The IJ made a determination on that. Correct. The IJ did make the determination. And it seems to me that the BIA followed his advice in both instances. And in the most recent case on this point here in this Court, and I believe it's called Alma Herry, which came out on August 6th, there was a similar situation where the Petitioners also stated that the reason for their delay was because of their counsel gave them bad advice. And the IJ and the Board found that they had not proven it because they had not submitted a Lizada claim. So they didn't buy that testimony either. Yet, the panel still gave jurisdiction and analyzed whether or not when they filed was reasonable or not. So they did not decline jurisdiction. This Court did not decline jurisdiction in that case. Well, at that point, they were considering an issue which the Board had not determined. The Board had not determined that — Well, they went off on a different tangent in that particular case. Whereas in this particular case, the Board focused in on, we make our own determination, the IJ was correct, and there's no clear error. Or, even if we take the second idea, we still don't find that to be a reasonable time period. But the Board failed to actually mention the fact that they looked for the FOIA. It just said, well, they knew about asylum law, and that's it. But they didn't mention that the petitioners actually did try to get an attorney. They just said, well, they knew about the laws. They should have followed it. That's a very good argument if you don't look at the IJ's decision. The IJ looked at all those issues and came to a conclusion. And all I'm suggesting is, they even quoted the IJ as to their first alternative. And then they came to the second alternative. I don't find any reason. If, in fact, they don't give enough reason, we have case law to suggest we can still look at the IJ if we think the BIA does not give a reasonable determination or a basis for their determination. So I look at the IJ, and the IJ did consider all those things that you are now arguing. Well, the IJ did, but the Board did not mention that when they were actually making their decision. So, yes, if you're going back, it seems to me it's still similar to the case in Al-Mahiri. I realize they did go off on a tangent, but in Singh versus Holder, when the Board did not mention the other factors, it was remanded so that they could actually make a determination bringing in all of those factors. In a similar situation. I understand. All I wanted to do is question you a little bit about it as I read it and see what your response would be. Thank you for your argument. Thank you. And the other issue was, of course, we argue that they did have reasonable time because it took the government six months or so, according to the testimony, to get the FOIA, and then that attorney said, oh, well, I can't do anything. They hired a new attorney and filed within three months. Regarding the credibility issue, which I realize you've already gone into, I mean, the fact that they no one's arguing that this did not occur. There's no skepticism by the judge as to when these facts actually occurred. It was just about the knowledge. If, in fact, we don't agree with you on the asylum, we would still, as I understand your argument, remand to have the BIA assess the fear of future persecution based on the membership of a group. That's correct, Your Honor. Because at the time that the judge actually, the IJ, actually decided this case, Wakari V. Holder had not yet been applied to withholding cases. It was solely, it was solely they were using Seil and Lolong. So he said if this were, you know, withholding case, we can't even use the disfavor group analysis, which, of course, was true. But at the time that the board ruled on this case, they should have made such a determination, yet they failed to do so. And for that, I believe it should be remanded for that redetermination. Any other arguments you want to make, Counselor? No. No, I don't have any other questions. Then save some for rebuttal and let's hear what the government says. I would like to save some, and I know I did not do that at the beginning. Okay. You got three and a half minutes. Thank you so much. Thank you. Glad to have you here. Thank you. Good morning, Your Honors. May it please the Court, Todd Calkin on behalf of the Attorney General. The question is not a petition for review because, as the Court recognized a few moments ago, it lacks jurisdiction, or whether extraordinary circumstances excuse Mr. Sinko's ---- Well, let me ask you about that. With regard to jurisdiction, is this a case where we're actually resolving any disputed facts, or are we asking instead whether the BIA sufficiently analyzed the Petitioner's proffered reasons why he didn't timely file? I think because the Board itself resolved facts, so they're disputed below. And the fact that they were disputed below the credibility finding regarding when he actually knew he was out of status, that dispute of facts below deprives the Court of jurisdiction here. Well, the BIA talked about the fact that the I.J. found the Petitioner lacked credibility, and he knew he was out of status. But did the BIA decision talk about his proffered reason for why he didn't timely file, mainly that he basically relied on the Church to take care of immigration papers? There was a series of confusing events that happened, including the visa and what happened, and it was issued. And so he said he was confused. The I.J. said, well, I think you knew you were out of status. So, and then the Petitioner also said, well, I thought that my Church would take care of it. Did the BIA address that at all? Well, the Board addressed whether it was a reasonable time period, assuming the Court does have jurisdiction over the issue, about whether it was a reasonable time period for when he applied, given all that confusion of the different visas that Your Honor mentioned. You know, when a judge asks a question, there's always a reason for it, and they're looking for a direct answer, and yours is a general answer. Did the Board address what Judge Wynn just pointed to? The Board addressed it in terms of whether it was — yes, Your Honor, the Board addressed whether it was a reasonable time period and came to the conclusion that it was — that it was not. I'm trying my best to answer Your Honor's question here. But — Where — I'm sorry. Go ahead. I was just trying to ask a follow-up. It doesn't seem to me — I mean, I think there are two analyses in the Board's decision, but it doesn't seem to me that the Board in any way said why it came up with the analysis it came up with. So unless I can get to the IJ decision, I don't know what they're thinking. Well, I think, Your Honor, the Board cites to the Walkeri and the Hisia cases. It cites to it for sure, but it says here, and I'm looking at the Board decision. I don't see it. That's why I asked you the question. It talks about the Respondent lacking credibility concerning his knowledge of his legal status, and then it says we find no clear error on the IJ's part in this Respondent's claimed date of knowledge regarding his lack of status. The period, we find either time period to be — we do not consider either time period to be a reasonable time period. And then in the next page, it says Lead Respondent was familiar with the immigration laws of the country, was aware of individuals in his church applying for asylum. I don't see here what VA addressed his contention that because of the circumstances, he relied on the church to take care of his immigration papers. I don't think the Board specifically addressed that issue that Your Honor is raising, but by citing the Hisia case, which said that a presumptive six-month time period for reasonableness for applying for asylum following a loss of status or other extraordinary circumstance, and the Walkeri case, which cites the Hisia for the six-month period, but, you know, says you have to require, as the Board states, individualized consideration. I think here the Board was saying, albeit in a summary fashion of some sort, that, you know, the time period wasn't reasonable. And they note that, you know, he was familiar with the immigration laws of the country. He was aware that his congregants were applying for asylum. I think that's the way the Board addressed that situation here, Your Honor. Do you think that I can suggest the alternative finding is it all reasonably discussed? I mean, I see we do not consider either time frame to be a reasonable period. That's the end. I don't see any other basis. I don't see any reason why they said that. I don't see any reason why they came to that conclusion. If I can't get some way to the I.J. decision, I don't even know how I can look at it. Well, Your Honor, I think you can look at the I.J. decision in this situation here. Why? Because the Board incorporated the I.J. in rendering its decision by citing back to it. And I think the by doing that, you can even Cite to the I.J. decision as to the first alternative, but there's nothing in the second alternative that cites to it. That's true, Your Honor. I don't know how to respond to that, Your Honor. So is there a way for me to get to what the I.J. thought, or have I got to take another alternative, send it back for further discussion? Well, I think, I mean, as I've let off with, I think this is an issue that you don't even need to get to, Your Honor, because the lack of jurisdiction in this case. Well, I can find the lack of jurisdiction as the first alternative, but as the second alternative, this is a factual dispute. We don't know why they came out. Well, why did they come out that way? Well, they found, the Board agreed with the immigration judge that Mr. Sincoe was incredible in terms of when he actually had knowledge of it, of when he filled out his status. And I recognize that it goes more specifically to the first analysis, as Your Honor references, but I think that permeates throughout, and they don't consider either time frame to be a reasonable period. It's affirming what the immigration judge said around the issue below. All right. That's what I wanted to see your answer. Your Honor. What are you going to say about this, even if we get through asylum, and we suggest asylum isn't before us, at least as to past persecution, haven't we got to remand for fear of future persecution? Well, I think counsel is suggesting that he's a member of a disfavored group. Right. And even if he is a member of a disfavored group, then he has to still show some individualized risk to himself. And he simply states that because I'm a minister, I'm going to be at a higher risk of persecution back in Indonesia. But he doesn't show any individualized risk to him. He's simply speculating that something would happen to him in the future if he were to be sent back there to Indonesia. So he the burden is on him to show the individualized risk on the sliding scale of the disfavored group, and I don't believe that Mr. Sinko has done so. Well, after the BIA analysis, the Court issued the Tampubalon's decision in 2010, where we said this is a disfavored group in Indonesia. Correct. Well, it seems to me somebody ought to talk about that before we go forward. A good reason to send it back for fear of future persecution. Yes, I recognize the Tampubalon case, Your Honor. I still maintain that he hasn't shown an individualized risk. Just by being a member of a disfavored group doesn't provide him with a basis for asylum. Mr. Sinko still has to show an individualized risk to him, and his only argument on that is simply I'm a minister, and that's my individualized risk. He hasn't shown any events that have occurred to him or would occur to him in the future that would put that risk on him. Okay. Any further argument? Unless, of course, there's any further questions, no. No, thank you, Your Honor. Thank you. I'd like just to revisit, if I may, the Board's ruling about it not being reasonable and not discussing the factors going — it's true, the Board does not actually talk about any of the factors to let us know what made them think it wasn't reasonable, regardless of what the date was. Knowing the immigration laws does not incorporate the judge's finding about what was going on with the pending adjustment application and — because there are two different things that got denied. One was denied in August, but then his attorney turned around and filed the adjustment application, which was then denied in March. None of that came into the Board, so we don't even know if they were thinking that, if they were considering getting the attorney, it was the FOIA. They just basically said, well, they knew about the law, and that's that. So I don't think that the Court can even get to that part. Well, here's my problem. I have this case, Avotova-Elisevia, E-L-I-S-S-E-V-A, versus INS. It's a 2000 case from our court, which says that the BIA's lack of analysis indicates that it gave significant weight to the IJ's findings. And I guess this is where I am here. I can find that the BIA had a lack of analysis. So then I get to the Avotova case, and it says when there's a lack of analysis, they gave significant weight to the IJ findings. And then I find right in that paragraph where they even cited the IJ as to their first alternative. So it seems to me that even if you say the BIA had lack of analysis, given the Avotova case, I've got to say they gave significant weight to the IJ findings, which means I have  And when I get there, there's enough to suggest what happened on asylum. That's my worry. That's why I've been asking you these questions. I understand, Your Honor. When I say lack of analysis, I meant lack of details. We don't know which part. So they actually said their finding was that he should have known because other people were applying for asylum, but the judge, there were other factors involved that are just completely ignored. And that was why Singh was remanded. So it's not that they didn't say anything. They did say something, but they just did the throw of, they mentioned the fact that he should have known about asylum because he knew about the laws. But they did not mention anything, like I said, about as far as looking for the other attorney, as we don't even know if they even took that into account whatsoever. And that is what I believe is about Singh. So it's not that they just said it's not reasonable, period. They said, well, this is about the second factor I'm discussing. So it's not that they didn't list a factor. It just wasn't all of the factors that occurred. So we don't know exactly which ones. And they aren't even the ones necessarily, they aren't even the ones that the judge came up with. They're actually somewhat different. So it's not that it's just a vague reference to something that the judge said. It's actually a different reason. Knowing about the laws doesn't take into account, well, he actually went to attorney. So it's not, it's more like, oh, he didn't do anything at all. So we don't know. I mean, it's a little bit different. They're not the same thing. The IJ said, you should have known a long time ago. You should have been relying on the church. You should have taken more responsibility. But he didn't say, oh, you waited, you shouldn't have gone to this other attorney, etc. So it's just missing from that whole equation. It's another factor that once they found out, regardless of when they found out, there was another sequence of events that's gone ignored in this determination. And that's my argument on the first. As far as the second argument regarding the disfavored group analysis and the individualized risk, he did say it. I think we've heard your argument on that. And your time's expired. I was just going to say that the church burned down. That's it. Okay. Your time's expired. So thank you very much. Thank you. I'm sorry, I still saw something. That's okay. Case 09-71184, Singh Koh and Meng Kolm v. Holder is submitted.
judges: Hawkins, Smith, Nguyen